Law Library

FILED
SUPERIOR COURT
OF GUAM

CLERK OF COURT

**IN THE SUPERIOR COURT OF GUAM**

IN THE MATTER OF THE ESTATE )     PROBATE CASE NO. PR 0104-02

OF )

JESUS U. TORRES aka J.U. TORRES, )     **DECISION AND ORDER**

Deceased, )

## INTRODUCTION

This matter came before the Honorable Katherine A. Maraman on September 14, 2007, for a hearing on the *Opposition to Third Amended Creditors' Claim by Rosario Bautista and Manuel Sholing* filed by Daniel U. Torres and the Estate of Esteban U. Torres filed August 24, 2007. The *Opposition* was joined in by a portion of the heirs of Maria O.T. Cruz on September 6, 2007, and by Francisco U. Torres, individually and as the administrator of the estate of Jesus U. Torres, on September 10, 2007 (collectively "heirs"). Reduced to its essence, the opposition asserts that the claims against the estate of Jesus Torres filed by Bautista and Sholing are statutorily time-barred.

The Court also heard argument on Rosario Bautista's and Manuel Sholing's *Motion for Deposit Order and Other Relief* filed on March 5, 2007. Bautista and Sholing assert that they have disputed claims against the estate of Jesus Torres and its executor in the approximate amount of $3,331,900, and request the Court to order the estate's executor to deposit those sums with the Superior Court or in an interest bearing account pending disposition of their claims which are the subject of separate litigation in the Superior Court. *See Rosario Bautista and Manuel Sholing v. Francisco Torres, individually and as the previous special administrator and now executor of the Estate of Jesus U. Torres, deceased, and Peter F. Perez*, Civil Case No. CV0471-07, filed April 23, 2007 (Superior Court of Guam).

Appearing via teleconference was Wayson W.S. Wong, Esq. on behalf of the creditor-claimants Rosario Bautista and Manuel Sholing. Thomas Parker, Esq. appeared on behalf of Daniel U. Torres and the estate of Esteban U. Torres. John C. Terlaje, Esq., appeared on behalf of the estate

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

of Jesus U. Torres, and on behalf of Francisco Torres, individually and as the former special administrator and now executor of the estate of Jesus U. Torres. Also present in court was Joyce Tang, Esq. on behalf of the creditor-claimants Bautista and Sholing; and Lawrence J. Teker, Esq. on behalf of Gerturdes T. Cruz, Esteban T. Cruz, Roque T. Cruz, Daniel T. Cruz, Francisco T. Crus and Julia T. Cruz.[1]

Having considered the pleadings, arguments of counsel, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Jesus U. Torres, a local attorney, died August 27, 2002. On September 24, 2002, Jesus' brother, Francisco U. Torres, filed a *Petition for Special Letters of Administration* in the Superior Court of Guam, Probate Case No. 0104-02. Francisco Torres was appointed special administrator of the Estate of Jesus U. Torres on the same day, and granted the following specific powers:

> to collect and preserve all the personal property of said estate, and all the income, issues, rents and profits of the real and personal property of said estate, and to transact, deposit, and withdraw from any and all bank accounts and all claims and demands of the estate, and take charge of and manage the real estate, and preserve the same from damage, waste, and injury, and commence, maintain, and defend all suits and other legal proceedings necessary to carry out these powers. . . .

*Order Appointing Special Administrator*, Probate Case No. PR0104-02.[2]

---

[1] All parties except Bautista and Sholing shall be referred to collectively herein as heirs of the estate of Jesus U. Torres.

[2] These powers Francisco Torres was granted as special administrator are those provided to special administrators generally, and did not include powers generally reserved for administrators or executors. *See* 15 G.C.A. § 1907 ("The special administrator must take possession of all of the real and personal property of the decedent, and preserve it from damage, waste and injury, and must collect all claims, rents, and other income belonging to the estate; and for any such purposes may commence and maintain or defend suits and other legal proceedings as such special administrator. The special administrator may sell perishable property and exercise such other powers as are

2

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

The next entry in the court record occurred on April 23, 2003. Pursuant to an ex parte application of the Special Administrator, the presiding judge of the Superior Court entered an *Order Authorizing Special Administrator to Transact Business on Behalf of Decedent's Bank Account*. The purpose of the application was to permit the special administrator to close an attorney trust account left by the decedent at First Hawaiian Bank, to disburse trust account monies to the decedent's various clients, and to make other disbursements for their intended purposes. On April 19, 2004, the special administrator filed its *First Accounting Report* to the court. On June 30, 2004, 21 months after he was named special administrator of the estate of Jesus U. Torres, Francisco Torres caused to be published a *Notice to Creditors* which ran for three successive weeks in the *Marianas Variety News*, a newspaper of general circulation in Guam. The notice provided:

> to creditors, and all persons having claims against said Deceased, that within two (2) months after the first publication of this notice, they either filed them with the necessary vouchers in the Office of the Clerk, Superior Court of Guam . . . or exhibit them with the necessary vouchers to said FRANCISCO U. TORRES, Special Administrator, or to Peter F. Perez, attorney . . . .

On December 23, 2004, nearly six months after publishing its "Notice to Creditors," Francisco Torres filed a *Petition to Establish a Lost or Destroyed Will* offering what purported to be an unexecuted copy of a will executed by Jesus Torres in 1981. Various intestate heirs of Jesus Torres appeared and answered the petition through counsel in January of 2005 and

---

conferred upon him by his appointment, but, except when the powers, duties and obligations of an administrator are conferred upon him as provided in Section 1911 of this Title, he is not liable to an action by any creditor on a claim against the decedent. The special administrator may obtain leave to borrow money, or lease or mortgage real property, in the same manner as an administrator."). The Court notes that at the time of his appointment the court did not require Francisco Torres to provide "security for the faithful performance of his trust" as is authorized by 15 G.C.A. § 1905.

3

January of 2006. Discovery was conducted between the parties throughout 2006 primarily directed at the special administrator for an appraisal and accounting of the assets of the Jesus Torres estate.

Throughout this time, Francisco Torres was represented by attorney Peter F. Perez. By letter dated November 15, 2006, Wayson Wong, Esq. , on behalf of Rosario S. Bautista and Manuel C. Sholing communicated to Peter Perez that Bautista and Sholing were asserting or intended to assert against the estate of Jesus Torres. Bautista and Sholing were challenging fees received by Jesus Torres as an attorney, claiming the fees were excessive and in violation of various ethical standards of conduct required of Jesus Torres while he was alive. Wong's requests to Perez to amicably resolve Bautista's and Sholing's claims against the estate of Torres, as well as claims against Perez himself for breach of fiduciary duties, and his request to receive notice of the proceedings in administration of the estate of Jesus Torres were, from the evidence presented, ignored.

On December 28, 2006, the special administrator and the various intestate heirs filed a joint *Petition for Admission of Lost Will, Approval of Settlement Agreements, Appointment of Executor and Partial Distribution*. The special administrator moved, ex parte and unopposed, for an order shortening time on the hearing, which was granted, and on the same day as the petition was filed the presiding judge of the Superior Court entered an *Order and Decree for Admission of Lost Will, Appointment of Executor, Approval of Settlement Agreements, Releases, and Waivers, and Partial Distribution*. In the December 28, 2006 Order, the court, *inter alia*, named Francisco U. Torres as executor under the will, approved the settlement amongst the heirs of Jesus Torres, and "ratified and approved" the actions of Francisco U. Torres as special administrator and Peter F. Perez, Esq. as counsel to the special administrator. Despite Wong's previous request to Perez, Bautista, Sholing and Wong were not parties to, nor did they receive notice of , the ex parte proceeding.

4

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

On January 3, 2007, Rosario S. Bautista and Manuel C. Sholing filed a document entitled *Creditors' Objection to Ex Parte Proceeding* with numerous exhibits attached. Also on January 3, 2007, Bautista and Sholing filed combined claims against the estate of Jesus Torres in excess of $1 million each, alleging breach of fiduciary duties by Jesus Torres, seeking set aside of a contingency fee agreement, and restitution. On January 24, 2007, Francisco Torres, now in his capacity as executor of the estate, filed a *Rejection of Claim*, asserting that pursuant to 15 G.C.A. § 2503(a), the claims were time-barred because they were not filed within 60 days after the first publication of notice to creditors (June 30, 2004) published by Torres in his capacity as special administrator. *See* 15 G.C.A. § 2521.[3] Torres also rejected Bautista's and Sholing's claims on the basis that, as filed, they failed to comply with the affidavit requirement of 15 G.C.A. § 2517, and failed to comply with the requirement for claims on written instruments that a copy of the instrument be attached to the claim, *see* 15 G.C.A. § 2519. Bautista and Sholing filed *First Amended Claims* on February 5, 2007, correcting the technical deficiencies under 15 G.C.A. §§ 2517 and 2519; and filed *Second Amended Claims* on February 28, 2007. Bautista and Sholing filed *Third Amended Claims* on July 27, 2007 which the heirs of Jesus Torres, and Francisco Torres as executor of the estate of Jesus Torres now oppose.[4]

---

[3]Title 15 G.C.A. § 2521 provides in relevant part that "[a]ny such claim not so filed or presented [within 60 days of publication a provided by § 2503] is barred forever."

[4]Later, on September 4, 2007, Bautista and Sholing filed a document styled *Creditors' Motion to Strike Daniel U. Torres' and the Estate of Esteban U. Torres' Opposition to Third Amended Creditors' Claim* asserting that those parties do not have standing to assert any opposition, and that the objections they have raised are required to be addressed in the civil lawsuit Bautista and Sholing have filed against the executor of Jesus Torres' estate and against attorney Peter Perez, Superior Court Civil Case No. CV0471-07. In light of the Court's disposition of the pending motions submitted for review, and as the executor has standing to defend the claims of Bautista and Sholing, the Court need not reach the question of standing of the heirs. *See Department of Commerce v. U.S.*

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

On March 5, 2007, Bautista and Sholing filed a pleading styled *Creditors' Motion for Deposit Order and Other Relief* asking the Court for an order

> requiring the executor to deposit $3,331,900 into the Superior Court in cash and/or property, preferably cash, and with respect to the cash, into interest bearing account(s) with FDIC or similar insurance, to cover the creditors' claims against the executor and the estate for at least that amount; and if there are insufficient cash and/or property in the estate at this time, for an order requiring the executor to return to the estate or deposit in the Superior Court that portion of the preliminary distributions made to him by this Court's order filed on December 28, 2008, such that the total deposit can be made.

The statutory basis for the creditors' motion for an order to deposit funds is 15 G.C.A. § 2733.[5] The executor and heirs of the estate of Jesus Torres object to the motion for deposit order on the basis that it is, in effect, a pre-judgment attachment which they contend is bared by 15 G.C.A. § 2555.[6]

---

*House of Representatives*, 525 U.S. 316, 330 (1999) (citing *Director, Office of Workers' Compensation Programs v. Perini North River Associates*, 459 U.S. 297, 303-305 (1983) (presence of one party with standing assures that controversy before Court is justiciable); and *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, and n. 9 (1977) (same)); *Brown v. City of Los Angeles*, ___ F.3d ___ slip op. 3787 n. 1. (9th Cir. 2008) ("the presence in a suit of even one party with standing suffices to make a claim justiciable"). The motion to strike will therefore be denied as moot.

[5] Section 2733 of 15 G.C.A. provides in part: "If there is any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established, or absolute, must be paid into the Superior Court, and there remain, to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over or distributed as the circumstances of the estate require."

[6] Section 2555 of 15 G.C.A. provides: "A judgment against a personal representative, upon any claim for money, against the estate of the personal representative's decedent, when it becomes final, conclusively establishes the validity of the claim for the amount of the judgment; and the judgment must be that the personal representative pay, in due course of administration, the amount ascertained to be due. A certified transcript of the original docket of the judgment, if there is one, otherwise an abstract of the judgment must be filed in the administration proceedings. No execution shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or give the judgment creditor any priority of payment."

6

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

The Court finds that the *Opposition to Third Amended Creditor's Claim by Rosario Bautista and Manuel Sholing* is due to be denied. The Court further finds that Rosario Bautista's and Manuel Sholing's *Motion for Deposit Order and Other Relief* is due to denied in part; and granted in part.

## DISCUSSION

It is important to note that the powers of a special administrator under 15 G.C.A. § 1907 are not the same as the powers authorized to an executor or administrator, also referred to in Guam as a personal representative. As is true by statute in Guam, at common law a special administrator's authority was limited to "to collect[ing] and conserv[ing] the property of the estate for the time being and until the appointment of a permanent executor or administrator." *In re: Estate of Shadbolt*, 32 Haw. 683, 1933 WL 2383 *3 (Hawai'i Terr. 1933).

> The duties of a special administrator are similar to those of a receiver in chancery. See 1 Woerner's Am. Law of Adm. Sec. 181. 'An administrator *pendente lite* has been said to be not properly the representative of the deceased, but rather an appointee or officer of the court, his office closely resembling that of a receiver in chancery.' 18 Cyc. 1326."Quoting further: "The order of appointment adjudicates no property rights; it determines nothing except that property should be conserved and protected from loss or injury until some one shall be appointed and authorized to take possession of the estate for the purpose of administering it."

*Id.* In *Estate of Shadbolt*, the Supreme Court for the Territory of Hawaii held that publication of notice to creditors by the temporary or special administrator of a decedent's estate, even pursuant to an order of court to publish notice, did not relieve the executors under the will, once letters testamentary had been issued, from their duty to advertise notice as required by law of the personal representative of the estate.

Similarly, the Supreme Court of Montana has held that inasmuch as special administrators have no power to pay the debts of an estate, and because the creditors notice provisions of its statute does not include special administrators, a special administrator cannot limit the time for the presentment of claims by any notice he may publish.

7

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

> The powers of a special administrator are limited. He is 'to collect and take charge of the estate of the decedent *** and to exercise such other powers as may be necessary for the preservation of the estate.' Section 2500, Code Civ. Proc. Again, the statute authorizes him to collect and preserve for the executor or administrator all incomes, rents, issues and profits, claims and demands, of the estate; he must take charge and management of, enter upon, and preserve from damage, waste, and injury, the real estate, and for any such and all necessary purposes may commence and maintain or defend suits and other legal proceedings as an administrator. He may sell perishable property in certain instances, and 'exercise such other powers as are conferred upon him by his appointment, but in no case is he liable to an action by any creditor.' Section 2504, Code Civ. Proc. These statutes limit the functions of a special administrator to the exercise of powers necessary to collect and preserve the estate for the executor or administrator to be regularly appointed. The enumeration of particular powers, such as to sell such perishable property as may be ordered sold, and to collect rents, etc., is but to enable a special administrator to collect and preserve what otherwise might not be collected and preserved for the estate by any one in authority. The authority 'to exercise such other powers as are conferred upon him by his appointment' is but a further power to do what may be necessary to collect and preserve; it is not a power to exercise the powers and duties conferred upon a regular executor or administrator, such as the allowance or payment of claims." *State ex rel. Bartlett v. Dist. Court*, 18 Mont. 481, 46 Pac. 259.

*In re Ford's Estates*, 29 Mont. 283, ___, 74 P. 735, 737 (1903) (editorial ellipsis in original). The court then held that because the special administrator was not authorized to either pay or disallow claims, he was not entitled to be reimbursed for publication expenses of the notice to creditors.

> Neither should the special administrator receive credit for the expense incurred by him in publishing notice to creditors. He could not pay the debts of the estate; therefore he could not limit the time for the presentation of claims against the estate by any notice which he might have given. The provisions of the Code requiring appraisers to be appointed, and notice to creditors to be given, apply to administrators and executors regularly appointed as such, and are not applicable to special administrators.

*Id.*

Citing the Montana Supreme Court decision in *In re Ford's Estate* with approval, the Supreme Court of Washington has held that a special administrator's publication of notice to creditors prior to the grant of letters testamentary or of administration was ineffective to bar creditors' claims.

8

> The powers of a special administrator are purely statutory, and are limited to the collection and preservation of the personal estate and to caring for the real property for the general administrator when appointed. He has no power to exercise the powers and duties conferred upon a regular administrator 'such as the allowance of claims.' *State v. Sec. Jud. Dist.*, 18 Mont. 481, 46 Pac. 259; *In re Ford's Estate*, 29 Mont. 283, 74 Pac. 735; *In re Sackett*, 78 Cal. 300, 20 Pac. 863; *In re Wincox*, 186 Ill. 445, 57 N. E. 1073; 18 Cyc. 1326; Supple's Succession, 23 La. Ann. 24; *In re Parish*, 29 Barb. (N. Y.) 627. In the first case cited it was held that, the power of a special administrator being statutory, he could neither allow nor reject a claim, and that an order of the district court directing the payment of an indebtedness was void. In *Re Ford's Estate* the special administrator was denied credit for expenses incurred in the appointment of appraisers and the expense of publishing notice to creditors, because he was without authority to incur either, it being held that to sanction his publication of notice to creditors would be to limit the time for the presentation of claims in plain contravention of the statute.
>
> It being clear upon principle and authority as well as the statute that a special administrator has no power to pay claims against the estate, it follows that he has no authority to either allow or reject them.

*Ward v. Magaha*, 71 Wash. 679, 682, 129 P. 395, 397 (1913). California courts interpreting California's probate code, upon which Guam's probate code is based,[7] have similarly distinguished between the limited, specific powers of a special administrator and a special administrator upon whom general powers are conferred.

> Ordinarily a special administrator has no powers except to collect, conserve, and protect the estate of his decedent. Probate Code, secs. 460, 463. His obligations are

---

[7] "Because the Guam Legislature enacted a probate code substantially similar to the California Probate Code in 1953, [Guam courts] look to California case law for interpretation. *People v. Angoco*, 2007 Guam 1 ¶ 52 n. 4." *Zahnen v. Limtiaco*, 2008 Guam 5, ¶ 17. "Many sections of the Probate Code were adopted from California's Probate code, including Title 15 GCA § 2521, which bars claims not timely filed. In the absence of binding precedent or a compelling reason to deviate, this court has held California case law to be persuasive authority when interpreting a California statute from which the Guam statute was derived. *Cruz v. Cruz*, 2005 Guam 3 ¶ 9." *In re Perez*, 2005 Guam 27 ¶ 31 n. 11. "We rely on California caselaw as persuasive in the interpretation of the Guam Probate Code, 15 G.C.A. § 101 et seq., as California law provided the basis for the substantive changes in the enactment of a new Probate Code in 1981. See Introduction to Title 15, Guam Code Annotated, Estates and Probate." *In Matter of Estate of Borja*, 1997 WL 208982 n. 2 (D.Guam A.D. 1997).

9

to the estate solely. But where, as here, an order is made conferring on the special administrator general powers, it has the effect of conferring and imposing on him "*** the powers, duties and obligations of a general administrator". Probate Code, sec. 465. Thereafter he has obligations to perform to others than merely to the estate; that is, among other things, he must proceed, in due time and as provided by law, to receive, and act on claims presented against the estate.

*Dodson v. Greuner*, 28 Cal.App.2d 418, 421, 82 P.2d 741, 743 (1938) (editorial ellipsis in original).

"The appointment of a special administrator is not intended to bring about a general administration of the estate; his powers are limited by the section, and, while they may, by order of the court, be made to embrace duties not strictly within the letter of the statute, under the pressure of necessity made to appear, the appointment should not continue longer than is reasonably necessary to secure the appointment of an administrator, who would have all the powers given executors." *In re Chadbourne's Estate*, 14 Cal.App. 481, 485, 112 P. 472, 474 (1910).

For purposes of presentation and payment of claims against the estate under Chapter 25 of Title 15, Guam Code Annotated, it is the personal representative of the estate, not the special administrator, who is required to publish notice to creditors.

(a) The *personal representative*, promptly after letters are issued, shall cause to be published in a daily newspaper of general circulation in the territory of Guam a notice to the creditors of the decedent, requiring all persons having claims against the decedent to file them, with the necessary vouchers, in the office of the Clerk of the Superior Court, or to present them, with the necessary vouchers, at the *personal representative's* residence or place of business, to be specified in the notice, within sixty (60) calendar days after the first publication of the notice.

(b) The *personal representative*, promptly after letters are issued, shall make a reasonable investigation as to the identities of the decedent's creditors. Such investigation shall be completed not more than thirty (30) calendar days after letters have been issued to the personal representative. The *personal representative*, promptly after the completion of the investigation provided in this subsection, shall send, by registered mail, a copy of the notice to creditors required by subsection (a) of this Section to each creditor of the decedent whom he discovered during the investigation provided in this subsection, noting thereon the last day upon which claims may be filed or presented as provided in subsection (a) of this Section.

10

15 G.C.A. § 2503 (emphasis added). With exceptions not relevant to this discussion, any claim against an estate that is not filed or presented or presented to the personal representative within the 60 days provided for notice to creditors *by the personal representative* as required by § 2503 is "forever barred." *See* 15 G.C.A. § 2521.

Guam law defines a personal representative as "the executor, the administrator with the will annexed, or the administrator, *but shall not mean a special administrator* unless the special administrator's powers are made general pursuant to the provisions of Section 1911 of this Title." 15 G.C.A. § 2501 (emphasis added).[8]

> The provisions of Chapter 25 are intended to deal with matters occurring during the regular course of administration. Special administrators, having been appointed for particular purposes, should not be subject to the provisions of Chapter 25 because their duties under law are not those of regular personal representatives (unless their powers are made general, as provided in § 1911.) Once a regular personal representative has been appointed, or once a special administrator's powers are made general, that person must then comply with the provisions of Chapter 25.

Compiler's Comment, 15 G.C.A. § 2505.

By statute on Guam, a special administrator with the general powers of an administrator or executor is provided for only in specifically defined and limited circumstances; and in order for a special administrator to have the same powers and duties as an executor or administrator, the language of the letters of administration must recite the fact that the special administrator has those general powers.

---

[8] *Cf.* 15 G.C.A. § 2201, which defines generally the powers and duties of executors, administrators with the will annexed, and administrators, but does not include special administrators in the definition of personal representatives. "The term personal representative, as used in this Chapter, shall mean the executor, the administrator with the will annexed, or the administrator of a decedent's estate, as the case may be." *Id.* As is true with respect to Chapter 25 of Title 15, the Compiler's Comment to 15 G.C.A. § 2201 emphasizes that "the provisions of Chapter 22 do not apply to special administrators."

> When a special administrator is appointed pending determination of a contest of a will instituted prior to the probate thereof, or pending an appeal from an order granting, suspending or revoking letters testamentary, letters of administration with the will annexed or letters of administration, the special administrator shall have the same powers, duties and obligations as an administrator and the letters of administration granted to the special administrator shall recite that such special administrator is appointed with the powers of an administrator.

15 G.C.A. § 1911(a).

Francisco Torres was not "appointed pending determination of a contest of a will instituted prior to the probate thereof, or pending an appeal from an order granting, suspending or revoking letters testamentary, letters of administration with the will annexed or letters of administration," and his order of appointment on September 24, 2002, does not recite that he was appointed with the powers, duties and obligations of a general administrator as provided in 15 G.C.A. § 1911(a).

> This being true, the order of the circuit judge that the temporary administrator file an inventory of the property of the estate and advertise notice to creditors "with power * * * to commence and maintain and defend * * * suits and other legal proceedings," and with authorization "to pay all lawful claims against the estate of said deceased," did not and could not affect the above named statutory powers and duties of the executor, and the directions in the order of June 9, 1932, that the temporary administrator advertise notice to creditors with appended provision that "if such claims be not presented within four (4) months from the first publication of the notice, they shall be forever barred," followed by notice in conformity with said order, did not and could not deprive creditors of their rights against the estate and the executors nor accelerate the time within which such creditors must act under the statutes above referred to.

*Estate of Shadbolt*, * 3 (editorial ellipsis in original). In his capacity as special administrator, Francisco Torres was neither required nor even authorized to publish notice to creditors because he was not the personal representative of the estate of Jesus Torres. His publication of notice to creditors was, and remains, ineffective to bar claims against the estate under 15 G.C.A. §§ 2503, 2505 and 2521. The proper procedure for Francisco Torres to have followed would have been to

12

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

petition the court for letter of special administration with general powers. Only then would his publication of notice to creditors have been effective.[9]

Citing *O'Bryan v. Superior Court of Los Angeles*, 18 Cal.2d 490, 494, 116 P.2d 49 (1941), the heirs argue that a "court has broad powers in the appointment of Special Administrators and in conferring or limiting the authority which Special Administrators have." That is undoubtedly true, and it is codified in 15 G.C.A. § 1911. But that is not what happened here. Francisco Torres was not given any powers or authority or responsibilities beyond those of an ordinary special administrator as provided in 15 G.C.A. § 1907. The heirs' citation in footnote to *Wood v. Brown*, 39 Cal.App.3d 232, 114 Cal.Rptr. 63 (1974), for the proposition that a "court inherently can authorize a Special Administrator to publish a Notice to Creditors," true though that may be, is not helpful because it does not reflect what authority the special administrator was in fact granted in that case, and the question whether the special administrator in *Wood* had been granted general powers of an administrator pending the appointment of the executrix in that case does not appear to have been placed in issue.

The heirs and executor of the estate argue that the *Order and Decree for Admission of Lost Will,* [and] *Appointment of Executor* entered December 28, 2006 appointing Francisco Torres

_____

[9]*See e.g., In re Glassford's Estate*, 114 Cal.App.2d 181, 185, 249 P.2d 908, 911 (1952) ("In May, 1950, the Public Administrator of Los Angeles County was appointed Special Administrator of decedent's estate and in the following October he was appointed Special Administrator with general powers. He took possession of the property, published notice to creditors, and filed inventory and appraisement."). *See again Dodson v. Greuner*, 28 Cal.App.2d 421, 82 P.2d 743 ("When on March 13, 1934, the order was made 'providing that such special administrator shall thereafter have the additional powers, duties and obligations of a general administrator ***.' (Probate Code, sec. 465), such order had the effect, so far as the rights of this plaintiff are concerned, of making and constituting defendant's letters of administration general and the plaintiff was bound to act accordingly.") (editorial ellipsis in original).

13

executor and ratifying and approving his acts as special administrator of the estate "relate back" to the time of Jesus Torres' death. The heirs and executor cite no Guam or California precedent for this argument. They rely on cases from Florida, Minnesota, Colorado, North Carolina, Ohio, New Jersey and Pennsylvania, all of which the Court finds distinguishable.

The heirs cite *Cunningham v. Florida Dept. of Children and Families*, 782 So.2d 913 (Fla. 2001) for the general proposition, in Florida, that "when letters of administration are granted, they relate back to the intestate's or testator's death." *Id.*, 782 So.2d 916 (citing *Griffin v. Workman*, 73 So.2d 844, 846 (Fla. 1954)). *Cunningham* involved the question whether the filing of a wrongful death lawsuit by a person who had not been properly appointed personal representative of the decedent "related back" once letters of administration were properly granted. The Florida Supreme Court held that it did. "If a personal representative was improperly appointed, the subsequent appointment of a substituted personal representative relates back to the filing of the original complaint, and the substituted personal representative is entitled to go forward with the action." *Id.* The dispositive issue and the holding in the case involved not whether, for purposes of probate of the estate, the substituted representative's acts related back and could be ratified to exclude creditors of the estate, but whether, for purposes of pleading a civil lawsuit, the substitution of a proper representative of the estate related back.

The Florida Supreme Court, in *Griffin, supra*, noted that "[w]hether the substitution of a party plaintiff, having capacity to bring the suit, in the stead of the original plaintiff who filed the action without capacity to bring the suit, is a change in the original cause of action depends entirely upon the allegations in the amended complaint." *Griffin*, 73 So.2d at 847. "The mere substitution of parties plaintiff, without substantial or material changes from claims of the original petition, does not of itself constitute setting forth a new cause of action in the amended petition." *Id.* The *Griffin* court noted that an amendment that corrects the allegations in a complaint with respect to a plaintiff's capacity to sue relates to the "right of action," as distinguished from the "cause of action." *See id.* The *Griffin* court went on to explain that "[a] 'right of action' is remedial, while a 'cause of action' is substantive, and an amendment of the former does not affect the substance of the latter," and does

14

not prevent an amended complaint from relating back to the date of the filing of the original complaint for purposes of the statute of limitations. *See id.*

*Cunnigham*, 782 So.2d 916 (editorial brackets in original). The Court does not find *Cunnigham* to be on point to the issues presented in the case at bar. The Court is not here faced with the mere substitution of parties which affects the remedial "right of action" possessed by the estate as opposed to a "cause of action" possessed by a potential creditor or claimant to the estate. Here, the executor and the heirs seek to exclude and "forever bar" creditors to the estate of Jesus Torres from their claims, their substantive cause of action, without ever having received the notice that is required by statute to published by the personal representative of the estate.

The executor and heirs cite another Florida wrongful death case, *Talan v. Muphy*, 443 So.2d 207 (Fla. 1983), for the proposition that "the issue is ruled by the ancient doctrine 'that whenever letters of administration or testamentary are granted they related back to the intestate's or testator's death.'" *Id.* 443 So.2d 208 (quoting *Griffin v. Workman*, 73 So.2d 844, 846 (Fla. 1954)). The Court finds this case is actually helpful in distinguishing Guam law and California precedent from Florida law. The "ancient doctrine" referred to in *Talan, Cunningham,* and *Griffin*, relied upon by the heirs and executor here, is the doctrine of "executor de son tort." The Florida Supreme Court explains:

> As to the change in capacity, our supreme court has specifically addressed this issue in *Griffin v. Workman*, 73 So.2d 844, 846 (Fla.1954):
>
>> We think, therefore, that the issue is ruled by the ancient doctrine "that whenever letters of administration or testamentary are granted they relate back to the intestate's or testator's death. * * * The doctrine has been accepted with virtual unanimity, since it was promulgated, in a long line of cases." Annotation 26 A.L.R. 1360. Under this doctrine "all previous acts of the representative which were beneficial in their nature to the estate and * * * which are in their nature such that he could have performed, had he been duly qualified, as personal representative at the time, are validated."
>
> The personal representative was the only person authorized to bring the wrongful death action. § 768.20, Fla.Stat. (1981). When Talan assumed the responsibility of

15

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

bringing the action without having the appointment, he did so as an executor de son tort. *Johnston v. Thomas*, 93 Fla. 67, 111 So. 541 (1927). When he was later appointed executor, his letter related back to the death of the intestate and his acts as executor de son tort were thereby validated insofar as they were acts he could have performed had he been duly qualified as a personal representative. *Griffin*; 31 Am.Jur.2d Executors and Administrators § 679 (1967); *see also Bermudez v. Florida Power & Light Co.*, 433 So.2d 565 (Fla. 3d DCA 1983) (letters of administration related back to action filed in name of personal representative before letters were issued).

*Talan*, 443 So.2d 208 (editorial ellipsis in original). In *Johnston v. Thomas*, 93 Fla. 67, 111 So. 541 (1927), the Florida Supreme Court explained further what an executor de son tort is.

In section 2903, p. 1211, of 24 C. J., it is said:

'An executor de son tort is a person who without authority intermeddles with the estate of a deceased and does such acts as properly belong to the office of an administrator, and thereby becomes a sort of quasi executor, although only for the purpose of being sued or made liable for the assets with which he has intermeddled. The designation is inapt, in that it applies the term 'executor' to intestate as well as testate estates, and also in that it gives to a person who has merely incurred a certain liability by reason of his intermeddling an official title corresponding with that of a duly appointed representative, and in many states the so called office of executor de son tort has been abolished by statute, or is considered inconsistent with the prevalent system of administration. The abolition of the fiction of the office does not, however, relieve the wrongdoer from liability for his unauthorized intermeddling, but affects only the right to enforce such liability.'

*See, also,* 11 R. C. L. 456, 457.

Intermeddling may consist in collecting or taking possession of the assets, selling the property of the estate, paying out money of the estate in settlement of debts or otherwise or any acts which are of the character which usually evince a legal control. 24 C. J. 1212. But it is said in the same section that intermeddling with real estate will not constitute a person an executor de son tort.

*Johnston*, 93 Fla. 67, 81, 111 So. 541, 546 (citations omitted). Despite the statement in *Griffin* that the doctrine of executor de son tort has been accepted with "virtual unanimity," the doctrine, as noted

16

in *Johnston*'s citation to 24 C.J. p. 1211, has actually been abolished in many states, "or is considered inconsistent with the prevalent system of administration."

In California, from whence comes Guam's probate code as well as a body of precedent interpreting it, the doctrine of executor de son tort has been repudiated by the courts because of California's comprehensive system of administration embodied in its probate code. "In California the administration of a decedent's estate has from an early date been governed by comprehensive code provisions, originally in the Civil Code and Code of Civil Procedure and, since 1931, in the Probate Code. Accordingly, the doctrine of executorship de son tort has long been repudiated in this state. (*Bowden v. Pierce* (1887) [73 Cal. 459] p. 463, 14 P. 302, 15 P. 64.)." *Lampkin v. Vierra*, 198 Cal.App.2d 123, 126, 17 Cal.Rptr. 805, 807 (1961). "There is no such officer recognized under our probate practice as *executor de son tort.*" *Bowden v. Pierce* 73 Cal. 459, 463, 14 P. 302, 303 (1887) (citations omitted). Considering California's repudiation of the doctrine of executor de son tort, the Court finds the heirs' and executor's reference to Florida precedent distinguishable.

The heirs and executor next cite cases from Minnesota and Colorado in support of their argument that acts of the special administrator which are beneficial to the estate "relate back" to the time of death once proper letters of administration are granted. Both cases, however, depend upon a relation back doctrine embodied in specific statutes which Guam and California do not share. In *Brown v. Brown*, 43 Colo.App. 535, 537-38, 608 P.2d 840, 842 (1980), the defendant presented the argument that acts of an individual prior to his appointment as personal representative "relate back" and validated his actions prior to appointment. But the defendant's argument was based on a Colorado statute, § 15-12-701, C.R.S. (1973), which reads in pertinent part: "The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." Citing a

17

statute similar to Colorado's, a Minnesota appeals court found that the acts of an individual appointed as personal representative who disallowed a claim before she formerly executed and filed an acceptance of her appointment related back to the date of her appointment. *In re Estate of Gerhardt*, 369 N.W.2d 335, 336 (Minn.App. 1985).[10] Another Minnesota case cited by the heirs, *Lehman v. Norton*, 191 Minn. 211, 253 N.W. 663 (1934), which is based on a related Minnesota statute allowing a properly appointed executor or administrator to continue mortgage foreclose proceedings,[11] does not offer anything particularly useful to the analysis because Guam has no comparable statutes providing for the relation back and ratification of unauthorized acts of a special administrator once the individual is named personal representative of an estate.

The heirs and executor next quote from a North Carolina case:

> In order to protect property rights and to protect one who, prior to his appointment, has acted to preserve the estate, it is the universal rule that all previous acts of the personal representative prior to his appointment which were beneficial in nature to the estate and which would have been within the scope of his authority had

---

[10]The court specifically referenced a Minnesota statute which reads in its entirety: "The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter. Prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to the body, funeral and burial arrangements. A personal representative may ratify and accept acts on behalf of the estate done by others where the acts would have been proper for a personal representative." M.S.A. § 524.3-701.

[11]Quoted in *Lehman*, 2 Mason, Minn. St. 1927, § 8799, provides: "When any mortgagee of real estate, or any person to whom a mortgage is assigned, dies without having foreclosed such mortgage, all the interest in the mortgaged premises conveyed by such mortgage and the debt secured thereby shall be considered as personal assets in the hands of the executor or administrator; and he shall have the same right to foreclose the mortgage or collect the debt as the decedent could have had if living, and he may complete any proceeding commenced by decedent for such purpose." The court found the application of statute clear enough: "It states that the executor may complete proceedings commenced by the [decedent]." *Lehman v. Norton*, 191 Minn. 214, 253 N.W. 665.

18

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

> he been duly qualified, are validated upon his appointment which relates back to the death of the intestate for this purpose. *Jones v. Jones,* 118 N.C. 440, 24 S.E. 774; 21 Am. Jur., Executors and Administrators s 211; *see* Annot., 26 A.L.R. 1359.

*Graves v. Welborn,* 260 N.C. 688, 692, 133 S.E.2d 761, 764 (1963) . *Graves* involved another wrongful death action in which the question was whether a lawsuit filed by a widow who thought she was the proper personal representative of an estate filed an action before the statute of limitation had expired, before she had been granted proper letters of administration. The question was whether her attempt to amend the pleadings to cure the capacity in which she brought suit, as properly appointed administrator not as an individual, related back to her original filing.

The North Carolina Supreme Court first noted that "[a]lthough the appointment of an administrator relates back to the date of death of decedent *for many purposes*, the courts are not in accord as to whether it will relate back so as to validate an action brought prior to the appointment." *Id.,* 260 N.C. 692-93, 133 S.E.2d 764 (emphasis added). Before canvassing the law in New York, Iowa, Virginia and Florida, the court noted the general rule in federal courts that permits relation back of pleadings beyond the statute of limitations to cure a deficiency of lack of properly plead capacity of the plaintiff:

> It is a long established rule in the Federal courts that a lack of letters of administration may be cured, and an objection to want of capacity to sue, may be avoided by amendment or by substitution of the proper party at any time before hearing. Later appointments of this nature will relate back and validate the proceedings from the beginning regardless of the statute of limitations.

*Id.,* 260 N.C. 694, 133 S.E.2d 765 (citation omitted). The court then settled on Ohio cases as persuasive authority to be followed in North Carolina.

> The Ohio Court has since made it clear that the doctrine of relation back validates only those actions of a personal representative which are for the benefit of the estate. Where it was discovered that letters of administration had been applied for but not issued to the defendant administrator until after the expiration of the statute of limitations as to a tort action against the estate, the court held there was no relation back. *Wrinkle v. Trabert,* 174 Ohio St. 233, 188 N.E.2d 587.

19

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

\* \* \*

The basis of defendant's motion to dismiss the action is wholly technical. He has in nowise been prejudiced by the course of events. We therefore hold that, when issued, plaintiff's letters related back to the commencement of the action which was brought for the benefit of the estate prior to the bar of the statute of limitations, and that the complaint may properly be amended to allege the true facts. However, we must not be understood as holding that one who has never applied for letters or who, having applied, had no reasonable grounds for believing that he had been duly appointed, can institute an action for wrongful death, or any other cause, upon a false allegation of appointment and thereafter validate that allegation by a subsequent appointment. We think that the Iowa Court [in *Douglas v. Daniels*, 62 Ohio App. 1, 22 N.E.2d 1003 (1938)] correctly dealt with a pretender.

*Id.*, 260 N.C. 696-97, 133 S.E.2d 766-67.

The reasoning of the North Carolina Supreme Court actually has some appeal in the case at bar, although the facts of that case are sufficiently different to explain a different result. Indisputably, if the acts of Francisco Torres now as executor were to relate back to the time of Jesus Torres' death it would benefit the estate because it would operate to bar the claims of Bautista and Sholing. But that is not the only criteria by which the doctrine of relation back is to be applied. Were this Court to apply the doctrine of "relation back," it is not faced with any "wholly technical" pleading deficiency that would not prejudice the opposing party as was the case in *Graves*. Rather, as suggested by the North Carolina Supreme Court, the Court here is dealing with someone who, at the time of publication of notice to creditors, had not even sought proper letters of administration that included general powers, but was acting only in his capacity as special administrator who, by statute, possessed "no powers except to collect, conserve, and protect the estate of his decedent." *Dodson v. Greuner*, 28 Cal.App.2d 421, 82 P.2d 743. In short, as the North Carolina put it, at the time of publication of notice to creditors, Francisco Torres was a "pretender."

As noted by the heirs and executor, in those jurisdictions that apply the doctrine of "relation back," it is deemed "necessary to protect estates and aid administrators in the fulfillment of their

20

duties of administration." The cases cited by the heirs and executor wherein the doctrine has been successfully applied by the administrator with general powers or the executor all appear to involve litigation where the administrator had not, as of yet, been properly appointed to bring an action on behalf of the estate, and the administrator was allowed to cure a technical defect by amending the complaint to plead proper capacity. Here, however, Francisco Torres seeks to exclude potential claimants to the estate by asking the court to validate an act that in his capacity as special administrator he was not authorized to perform, and that he did not have even a arguable basis to assume he was.

Even in those cases cited by the heirs and executors, the doctrine of "relation back "is limited to situations of an "imperative nature" or of de minimus consequence. "This doctrine was designed to prevent injustice and is a legal fiction invented to link the time that must of necessity elapse between the death of the owner of the property and the appointment of a person to care for and distribute it according to law." *Kleiner v. Kleiner*, 139 N.J. Eq. 26, 49 A.2d 582 (1946).

> In *Bair v. Chambers*, 70 Pa.Super. 356, 359, a suit was brought to recover funeral expenses of the mother paid by a daughter. The present Chief Justice, then a member of this court, held that "Letters of administration, when granted, relate back so as to cover and validate acts previously performed in relation to the estate which are so imperatively necessary as that for which the expenses are here sued for.

> * * *

> An executor, before the granting of letters, may perform not only acts "merely passive," but also those of an imperative nature, for example, he may arrange for burial of decedent if there is no immediate next of kin. It cannot be broadly stated, therefore, that an executor named in a will, under all circumstances, is entirely devoid of authority to represent the estate until the granting of letters.

*Beckman v. Owens*, 135 Pa.Super. 404, 407-08, 5 A.2d 626, 627 (1939). The Court here is not faced with ratifying a "merely passive" act of the special administrator, or even an act "of an imperative nature," such as the payment of necessary funeral expenses. The Court is not here dealing with the

21

question of relation back of a complaint to cure technical deficiencies in pleading a civil cause of action before the statute of limitations runs. The Court here is faced with the exclusion of a potential creditor who has never received proper notice as required by statute under Guam law. The authority cited by the heirs and executor does not persuade the Court to adopt this legal fiction on these facts.

The Court holds that because Francisco Torres' appointment as a special administrator did not clothe him with the powers, duties and obligations of an executor or administrator with general powers as provided by 15 G.C.A. § 1911, then the notice to creditors he published on June 30, 2004 prior to being named executive and personal representative was ineffective to bar claims of creditors to the estate of Jesus Torres under 15 G.C.A. § 2503(a).

With respect to the remaining arguments raised in the *Opposition to Third Amended Creditors' Claim*, the Court holds that the affirmative defenses raised by the heirs and executor – statute of limitations; wavier; equitable estoppel; and laches – are more properly heard and decided by the Superior Court in *Rosario S. Bautista and Manuel C. Sholing v. Francisco Torres, etc. and Peter F. Perez*, Civil Case No. CV0471-07. *In re Joslin's Estate*, 165 Cal.App.2d 330, 345, 332 P.2d 151, 159 (1959) ("whether a controversy is of such a nature as should be adjudicated in probate depends mainly upon the status of the claimant and the nature of the property to which title is sought"); *In re Dabney's Estate*, 37 Cal.2d 672, 676-77, 234 P.2d 962, 966-67 (1951) ("It is established law 'That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate,'"). The Court finds that the *Opposition to Third Amended Creditor's Claim by Rosario Bautista and Manuel Sholing* is otherwise due to be overruled and denied.

22

As noted earlier in this Decision and Order, Bautista and Sholing have filed a pleading styled *Creditors' Motion for Deposit Order and Other Relief* asking the Court for an order

> requiring the executor to deposit $3,331,900 into the Superior Court in cash and/or property, preferably cash, and with respect to the cash, into interest bearing account(s) with FDIC or similar insurance, to cover the creditors' claims against the executor and the estate for at least that amount; and if there are insufficient cash and/or property in the estate at this time, for an order requiring the executor to return to the estate or deposit in the Superior Court that portion of the preliminary distributions made to him by this Court's order filed on December 28, 2008, such that the total deposit can be made.

The statutory basis for the creditors' motion for an order to deposit funds is 15 G.C.A. § 2733, which provides in relevant part:

> If there is any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established, or absolute, must be paid into the Superior Court, and there remain, to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over or distributed as the circumstances of the estate require.

The executor and heirs of the estate of Jesus Torres object to the motion for deposit order on the basis that it is, in effect, a pre-judgment attachment which they contend is barred by 15 G.C.A. § 2555.

> A judgment against a personal representative, upon any claim for money, against the estate of the personal representative's decedent, when it becomes final, conclusively establishes the validity of the claim for the amount of the judgment; and the judgment must be that the personal representative pay, in due course of administration, the amount ascertained to be due. A certified transcript of the original docket of the judgment, if there is one, otherwise an abstract of the judgment must be filed in the administration proceedings. *No execution shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or give the judgment creditor any priority of payment.*

15 G.C.A. § 2555 (emphasis added).

The Court declines to order the executor to deposit $3,331,900 into the Superior Court, and further declines to require the executor to return to the estate or deposit in the Superior Court that portion of the preliminary distributions made by this Court's order entered on December 28, 2008.

In the Matter of the Estate of Jesus U. Torres
**Decision and Order**
Probate Case No. PR 0104-02

As the heirs and executor argue, an order of deposit with respect to an unliquidated claim, or a claim that has not been reduced to judgment sounds in this instance in the nature of a pre-judgment attachment, which is of questionable legality both on Guam and elsewhere. At this point, the creditors' claim is merely that: a claim. Resolution and reduction of that claim to an actual judgment will have to await resolution of the Superior Court proceedings presently pending in Civil Case No. CV0471-07.

The Court will, however, require the Executor to deposit the entirety of all remaining monies and future income of the estate available to the Executor into the Superior Court, Office of the Clerk as provided by 15 G.C.A. §§ 2011(b), 2019 and 2033. The Executor shall make no future distributions of any kind from the estate without express authority from this Court.

### CONCLUSION

For the reasons stated above, the *Opposition to Third Amended Creditor's Claim by Rosario Bautista and Manuel Sholing* filed by Daniel U. Torres and the Estate of Esteban U. Torres on August 24, 2007, and joined in by a portion of the heirs of Maria O.T. Cruz on September 6, 2007, and by Francisco Torres, individually and as the administrator of the estate of Jesus U. Torres on September 10, 2007, is **OVERRULED**.

Creditors Rosario Bautista's and Manuel Sholing's *Motion to Strike Daniel U. Torres' and the Estate of Esteban U. Torres' Opposition to Third Amended Creditors' Claim* filed September 4, 2007 is **DENIED** as moot.

The Executor is hereby **ORDERED** to *promptly* comply with the notice to creditors requirements contained in 15 G.C.A. § 2503.

Creditors Rosario Bautista's and Manuel Sholing's *Motion for Deposit Order and Other Relief* filed on March 5, 2007 is **DENIED** in part; and **GRANTED** in part.

24

In the Matter of the Estate of Jesus U. Torres
**DECISION AND ORDER**
Probate Case No. PR 0104-02

---

The Executor is **ORDERED** to deposit the entirety of all remaining monies and future income of the estate available to the Executor into the Superior Court, Office of the Clerk.

**SO ORDERED** this February 26, 2009.

Honorable Katherine A. Maraman
Judge, Superior Court of Guam

Page 25